IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JOSEPH VINTON DONALDSON,**

      **Petitioner,**

v.                CASE NO. 24-3108-JWL

**DON LANGFORD,**

      **Respondent.**

### MEMORANDUM AND ORDER

This matter is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner and Kansas prisoner Joseph Vinton Donaldson. On April 23, 2025, the Court entered an order directing Petitioner to show cause, in writing, why this matter should not be dismissed because all of the grounds for relief asserted in the petition are either procedurally defaulted or barred by anticipatory procedural default. (Doc. 19.) The matter comes before the Court on Petitioner's response, filed June 9, 2025. (Doc. 22.) For the reasons explained below, this matter will be dismissed.

### Background

In 2012, a jury in Sedgwick County, Kansas convicted Petitioner of aggravated kidnapping, aggravated battery, and criminal threat based on his domestic violence against his wife, Nicole.[1] was the victim *See State v. Donaldson*, 2014 WL 4080074, *1-3 (Kan. Ct. App. Aug. 15, 2014) (unpublished) (*Donaldson I*), *aff'd* 306 Kan. 998 (2017). The state district court sentenced Petitioner to 592 months in prison and lifetime registration. *Id.* at *3. Petitioner pursued a direct

---

[1] The Court does not intend any disrespect or undue familiarity by using the victim's first name. Rather, for ease of understanding, the Court does so in line with the practice of the Kansas Court of Appeals opinion in Petitioner's direct appeal, which referred to Petitioner as "Donaldson" and his wife, Nicole Donaldson, as "Nicole" to avoid confusion.

1

appeal, but in an opinion issued on August 15, 2014, the Kansas Court of Appeals (KCOA) affirmed Petitioner's convictions and sentence. *Id.* at *13.

Petitioner then filed a petition for review by the Kansas Supreme Court (KSC). In October 2016, the KSC granted the petition "solely to address" Petitioner's claim that the lifetime offender registration requirement violated the Ex Post Facto Clause of the United States Constitution. *See State v. Donaldson*, 306 Kan. 998, 998-99 (2017) (*Donaldson II*[2]). The following month, before the KSC ruled on the Ex Post Facto issue, Petitioner filed in state district court a motion for state habeas relief under K.S.A. 60-1507. *See Donaldson v. State*, 2023 WL 8520162, *1 (Kan. Ct. App. Dec. 8, 2023) (unpublished) (*Donaldson III*). The state district court appointed counsel to represent Petitioner in the K.S.A. 60-1507 proceeding. *Id.*

On August 11, 2017, a majority of the KSC affirmed the KCOA's rejection of Petitioner's direct-appeal arguments regarding the Ex Post Facto Clause. *Donaldson II*, 306 Kan. at 999-1000. Petitioner filed a petition for certiorari in the United States Supreme Court, which was denied on June 25, 2018. *See Donaldson v. Kansas*, 585 U.S. 1019 (2018). This concluded Petitioner's direct appeal of his convictions and sentence.

In July 2019, the state district court held a preliminary hearing in the K.S.A. 60-1507 action at which the parties agreed that only four of the 38 claims Petitioner raised in his motion required an evidentiary hearing. *Donaldson III*, 2023 WL 8520162, *1. In September 2019, however, Petitioner filed a second K.S.A. 60-1507 motion, raising additional issues. *Id.* In April 2021, the district court held an evidentiary hearing on the four agreed-upon claims from the first K.S.A. 60-1507 motion. *Id.* At the evidentiary hearing, Petitioner sought to raise yet another claim; he was

---

[2] Petitioner pursued other litigation in state court while his direct appeal was pending, but those opinions are not relevant to this general summary of the procedural history that led to the current federal habeas matter. *See State v. Donaldson*, 2015 WL 1782344 (Kn. Ct. App. April 10, 2015) (unpublished).

allowed to present evidence on this claim, but the State argued that it was untimely raised. *Id.* The district court ultimately denied relief on the grounds raised in the first K.S.A. 60-1507 motion and dismissed the second K.S.A. 60-1507 motion—and the issue raised at the evidentiary hearing—as untimely. *Id.* at *2. Petitioner appealed and, on December 8, 2023, the KCOA affirmed. *Id.* at *5.

Petitioner began this federal habeas action on June 28, 2024, when he filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) He filed the operative second amended petition on December 9, 2024. (Doc. 13.) Therein, he asserts four grounds for relief and he asks this Court to vacate his conviction for aggravated kidnapping. *Id.* at 5-12, 14-15, 20. Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts requires the Court to review a habeas petition upon filing and to dismiss it "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." 28 U.S.C.A. foll. § 2254.

After beginning the required Rule 4 review of the second amended petition, the Court directed Respondent to file a Pre-Answer Response (PAR) addressing exhaustion of state court remedies and the doctrine of procedural default. (Doc. 14.) Respondent timely filed the PAR on March 3, 2025. (Doc. 17.) Petitioner had until April 14, 2025 to file a reply to the PAR if he chose to do so. (*See* Doc. 16.) He did not. Thus, on April 23, 2025, the Court issued a Memorandum and Order to Show Cause (MOSC) explaining to Petitioner that "'[a] threshold question that must be addressed in every habeas case is that of exhaustion.'" (Doc. 19, p. 4) (quoting *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (citation omitted)).

The MOSC explained that in order for Petitioner to have exhausted the federal constitutional claims now asserted in the operative second amended petition, each claim must have been fairly presented to the KCOA in a way that complied with state procedural rules and put the

3

court on notice of the federal constitutional violation being alleged. (Doc. 19, p. 4-6.) If the claim was presented to the KCOA only in a way that violated an independent and adequate state procedural rule, this Court cannot consider the merits of the claim, which is referred to as being "procedurally barred," or "procedurally defaulted." *Id.* at 5-6 (quoting *Banks v. Workman*, 692 F.3d 1133, 1144 (10th Cir. 2012)). Moreover, if the claim has not been properly presented to the KCOA and there is no avenue to now do so, the claim is referred to as being barred by anticipatory procedural default and this Court cannot consider the merits of the claim. (Doc. 19, p. 5 (citing *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007)).)

The MOSC analyzed each ground for relief in the operative second amended petition and concluded that "the arguments in Ground One are either procedurally defaulted or barred by anticipatory procedural default," while Grounds Two, Three, and Four are barred by anticipatory procedural default. (Doc. 19, p. 6-9.) Accordingly, the Court cannot consider the merits of the claims unless Petitioner either (1) shows cause and prejudice or (2) demonstrates that a fundamental miscarriage of justice will occur if the Court does not consider his claims. *Id.* at 9-10 (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Fontenot*, 4 F.4th at 1028; and *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).) After explaining the requirements for showing cause and prejudice and for demonstrating a fundamental miscarriage of justice will occur without consideration of the claims, the MOSC directed Petitioner to show cause why this matter should not be dismissed. (Doc. 19, p. 10-12.) As noted above, Petitioner filed his response to the MOSC on June 9, 2025. (Doc. 22.)

## Analysis

In his response, which the Court liberally construes due to Petitioner's pro se status, Petitioner first alleges that he only learned of the PAR, his opportunity to reply to the PAR, and

4

the MOSC on May 12, 2025, when he, of his own accord, checked the status of his case through the computer in the prison law library. (Doc. 22, p. 1.) He further asserts that several of Petitioner's cases or filings in those cases are not reflected on the computer, including this Court's order for the PAR and the filing of his second 60-1507 motion in state district court. *Id.* at 1-2. Petitioner questions whether the state district court "ever filed his second K.S.A. 60-1507" motion and he attaches to his response evidence that he raised the relevant claims in that motion. *Id.* at 1-2, 8-19. He argues that he "presented to the state court the same claim on which he now seeks federal habeas relief, which prevents the petitioner's claims from being barred by anticipatory procedural default." *Id.* at 2.

Petitioner's argument on this point neglects to take into account the distinction between a state district court and a state appellate court. As explained in the MOSC:

> The brief submitted by Petitioner in the appeal from the denial of his K.S.A. 60-1507 motions does not contain the arguments now made in Ground One of this federal habeas petition. (*See* Doc. 18-6, p. 1-26.) The brief does reflect that Petitioner argued to the *state district court* in his second K.S.A. 60-1507 motion that "[t]he conviction for kidnapping could not be sustained because there was no evidence of Donaldson holding the victim." (Doc. 18-6, p. 7.) The only argument in the appellate brief related to the second K.S.A. 60-1507 motion, however, was the unsuccessful claim that the district court improperly dismissed the second K.S.A. 60-1507 motion as untimely.

(Doc. 19, p. 7.) Similarly, as also explained in the MOSC, Grounds Two, Three, and Four were not raised to the KCOA and any attempt to now do so would be procedurally barred, so the anticipatory procedural default bar prevents this Court from considering them in this federal habeas matter. *Id.* at 8-9.

Generally speaking, when conducting an exhaustion analysis, the focus is not on whether a claim was fairly presented to the state district court but on whether it was fairly presented to the state appellate court or courts. In this case, Petitioner did not fairly present the federal

5

constitutional arguments in his second amended federal habeas petition to the KCOA in a procedurally appropriate manner. Nothing in Petitioner's response to the MOSC is persuasive to the contrary.

### Cause and Prejudice

Next, Petitioner argues that there was cause for his failure to exhaust his arguments and he has suffered actual prejudice as the result of the federal violations he alleges. As explained in the MOSC,

> To demonstrate cause for the default, Petitioner must show that some objective factor external to the defense impeded his ability to raise the claims to the state courts in the manner required by the state rule on timeliness. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [petitioner.]" *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted).
>
> The United States Supreme Court has explained that in order for ineffective assistance of counsel to constitute "cause" that excuses a procedural default, "the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" which "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Thus, for a petitioner to use the ineffective assistance of counsel as cause to excuse his procedural default, he or she must have argued *that* ineffective assistance of counsel claim to the state courts. Moreover, in addition to showing cause for default, Petitioner must show "actual prejudice as a result of the alleged violation of federal law" in order to obtain the cause-and-prejudice exception to the rule barring this Court from considering his claims. *See Coleman*, 501 U.S. at 750.

(Doc. 19, p. 10.)

As cause for his failure to raise the claims to the KCOA, Petitioner identifies the following "factors": (1) the district court clerk improperly filing or failing to file his second K.S.A. 60-1507 motion; (2) "the prosecution misconstruing the issues" raised in the second K.S.A. 60-1507

motion; and (3) Petitioner's counsel in the K.S.A. 60-1507 appeal failing to ensure the claims were raised to the KCOA. (Doc. 22, p. 2.) First, there is no indication that the second K.S.A. 60-1507 motion was not filed. It was dismissed by the state district court as untimely filed and it was discussed by the KCOA in the K.S.A. 60-1507 appeal, as noted in the MOSC. (Doc. 19, p. 2-3 (citing *Donaldson III*, 2023 WL 8520162 at *1-2).)

Turning to Petitioner's second asserted cause for the default, the Court is similarly unpersuaded. It is not clear what Petitioner means by "the prosecution misconstruing the issues" or how the prosecution doing so prevented Petitioner from raising the relevant claims in a timely fashion or prevented him from raising the claims to the KCOA. Thus, this does not constitute sufficient cause for the default.

The Court liberally construes Petitioner's third assertion of cause as an allegation that his K.S.A. 60-1507 appellate counsel provided ineffective assistance by failing to raise the relevant claims to the KCOA. As explained in the MOSC:

> The United States Supreme Court has explained that in order for ineffective assistance of counsel to constitute "cause" that excuses a procedural default, "the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" which "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Thus, for a petitioner to use the ineffective assistance of counsel as cause to excuse his procedural default, he or she must have argued *that* ineffective assistance of counsel claim to the state courts.

(Doc. 19, p. 10.)

Petitioner does not indicate in his response that he has ever argued to the state courts that his K.S.A. 60-1507 appellate counsel provided unconstitutionally ineffective assistance. Thus, ineffective assistance of that counsel cannot be used here to establish cause for a procedural

default. *See Edwards*, 529 U.S. at 452. Because Petitioner has not shown sufficient cause for the default of his claims, the Court need not address whether he has shown the required prejudice.[3]

## Fundamental Miscarriage of Justice

Petitioner also asserts that if this Court does not consider the merits of his asserted grounds for federal habeas relief, a fundamental miscarriage of justice will occur. (Doc. 22, p. 3.) Because analysis of this argument is necessarily fact-dependent, the Court pauses to note the facts of the case against Petitioner, as stated in the KCOA's opinion in Petitioner's direct appeal:

> This case arises from an incident of domestic violence between Donaldson and his wife, Nicole Donaldson (Nicole). On the evening of June 5, 2011, Donaldson was at home with Nicole and their 2 ½-year-old son; Nicole was also 6 months pregnant with their second child. After dinner, Nicole was in the kitchen washing dishes when Donaldson entered the kitchen and asked her what she was doing. Nicole responded, "Nothing." Donaldson told her that they needed to talk in the bedroom about their relationship so that he could teach her how to show respect.
>
> In the bedroom, Donaldson started yelling at Nicole, stating that she never respected him or his name and it was time for him to teach her some respect. He ordered her into the attached bathroom and directed her to look into the mirror and repeat after him that she will respect him, honor his name, and do what he says. Nicole complied but Donaldson started hitting her, claiming she gave the wrong answer. He struck her repeatedly in the face, on her back, and across her legs. Nicole started to cry and screamed for him to stop, but he refused.
>
> Donaldson started ripping off Nicole's clothes telling her she needed to shower because she was a "dirty filthy whore." Nicole showered and when she opened the shower door, Donaldson grabbed her around the neck and slammed her against the wall, lifting her off the ground. Donaldson eventually released his grip but refused to allow her to get dressed. Donaldson stepped back into the bedroom but returned a few minutes later with several plastic coat hangers and began to strike Nicole repeatedly. She screamed in pain, prompting Donaldson to yell at her to "shut up" and "be quiet."

---

[3] The Court notes, however, that Petitioner dedicates only one sentence of his response to the prejudice prong, stating: "Actual prejudice occurred when the petitioner was prejudiced by not being allowed to argue these 3 aggravated kidnapping grounds which could overturn the petitioner's case and remand it, and vacate it." (Doc. 22, p. 2.) To establish prejudice in this context, however, "the prisoner must show not merely a substantial federal claim, such that 'the errors at . . . trial created a *possibility* of prejudice,' but rather that the constitutional violation 'worked to his *actual* and substantial disadvantage.' [Citations omitted.]" *See Shinn v. Ramirez*, 596 U.S. 366, 279-80 (2022) (internal quotation marks omitted).

> Nicole tried to walk out of the bathroom but Donaldson pushed her to the floor. Moments later, Donaldson grabbed her by the hair and pulled her to a standing position. Donaldson then placed her in a chokehold. Nicole started to feel dizzy and light-headed; she thought she was going to pass out. Donaldson started punching her in the back of the head and pushed her back onto the floor. He told Nicole that he would kill her if she had a miscarriage because of what she had forced him to do.
>
> The abuse continued throughout the night. The next morning, Donaldson ordered Nicole to take another shower and then told her to feed their son and show him some love and respect. Donaldson refused to let Nicole get dressed. Once in the kitchen, Donaldson ordered Nicole to get on the floor but to avoid putting pressure on the baby. Nicole assumed a position on her hands and knees at which point Donaldson poured cold water over her wounds and hit her multiple times with a spatula. Donaldson eventually got on the floor in front of Nicole and told her she was not worth it; he would never be able to teach her respect, so he was just going to kill her.
>
> Donaldson went into the living room for a few minutes and then returned to the kitchen. He told Nicole he was going to take a nap and afterwards he was going to kill her. Donaldson went to the bedroom and shut the door. Nicole threw on some dirty clothes she found in the laundry room. Donaldson came out and asked Nicole if she was aware that he intended to kill her. She said "yes" and Donaldson warned her that she had 10 minutes to prepare to die. When Donaldson went back to the bedroom, Nicole grabbed her son and car keys and fled from the apartment.

*Donaldson I*, 2014 WL 4080074 at *1-2.

The MOSC set forth the criteria for applying the fundamental miscarriage of justice exception:

> To proceed under this exception, a petitioner "must make a colorable showing of factual innocence." *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000). Petitioner is not required to conclusively exonerate himself to obtain the benefit of the actual innocence exception. *See Fontenot*, 4 F.4th at 1030. Rather, to qualify for the exception, Petitioner must identify to this Court "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *See Schlup v. Delo*, 513 U.S. 298, 324 (1995)); *see also Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) (defining "new evidence" in this context as "evidence that was not considered by the fact-finder in the original proceedings"). He "must establish that, in light of [this] new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). "An actual innocence

> claim must be based on more than the petitioner's speculations and conjectures." *Taylor*, 7 F.4th at 927.
>
> > The actual innocence standard is demanding and is not easy to meet. Only an extraordinary case—in which there is "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error"—will justify application of the actual innocence exception. *Fontenot*, 4 F.4th at 1031 (citations and internal quotation marks omitted). "This exception 'is intended for those rare situations where the State has convicted the wrong person of the crime or where it is evident that the law has made a mistake.'" *Taylor*, 7 F.4th at 926-27 (citations omitted). It exists "to ensure that [a] petitioner's case is truly extraordinary while still providing [a] petitioner a meaningful avenue by which to avoid a manifest injustice." *Fontenot*, 4 F.4th at 1031 (citations and internal quotation marks omitted); *see also Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007).

(Doc. 19, p. 11-12.)

Petitioner's response to the MOSC identifies the following as new reliable evidence that supports his assertion of factual innocence: (1) the testimony of two unnamed witnesses "who would have testified that the petitioner was actually innocent of the aggravated kidnapping" and (2) Nicole's "confession" that Petitioner had not kept her against her will and that she was free to go at any time during the events underlying Petitioner's criminal conviction of aggravated kidnapping. (Doc. 22, p. 3.) Petitioner further explains that the two witnesses' failure to testify at trial was due to trial counsel's failure or refusal to call them. *Id.*

The testimony of the two unnamed witnesses is "new" because it was not presented at Petitioner's criminal trial. *See Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) ("To be 'new,' the evidence need only be evidence that was not considered by the fact-finder in the original proceedings. [Citation omitted.]"). But this Court also must determine whether the evidence Petitioner identifies is reliable. *See McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Shlup*, 513 U.S. at 332, for the statement that "'[a] court may consider how . . . the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]'").

The Court concludes that the testimony of the two witnesses cannot be deemed reliable. Petitioner neither identifies the witnesses nor details what testimony they would give. *See, e.g., Scott v. Bridges*, 2023 WL 5016642, *11 (E.D. Okla. Aug. 7, 2023) (unpublished opinion and order) (finding documents referred to but not presented were not reliable evidence). Without any information about the content of the two witnesses' expected testimony or their identities, the Court cannot effectively analyze whether the testimony would make it "more likely than not that no reasonable juror would have found [P]etitioner guilty beyond a reasonable doubt." *See House*, 547 U.S. at 536-37.

"An actual innocence claim must be based on more than the petitioner's speculations and conjectures." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence." *Schlup*, 513 U.S. at 324. Petitioner's bare allegation that two unnamed witnesses would testify "that the petitioner was actually innocent of the aggravated kidnapping" is the type of conclusory statement that cannot sufficiently support a claim of factual innocence.

Petitioner also argues in his response that Nicole's "confession" is new reliable evidence that demonstrates his factual innocence. He refers the Court to the document attached to his response to the MOSC for evidence of the "confession." (Doc. 22, p. 3.) Attached to the response are 12 pages, the first 9 of which are titled "Document One." *Id.* at 8-19. Petitioner explains in his response that Document One is an excerpt from his second K.S.A. 60-1507 motion. *Id.* at 2.

Liberally construed, as is appropriate since Petitioner proceeds pro se, Document One asserts that Nicole created "a handwritten narrative" that was filed in what appears to be a separate Kansas state court divorce proceeding in which she stated that Petitioner had slept for an hour during the events that led to his conviction. *Id.* at 9-10. Document One also alleges that when a

detective asked Nicole if Petitioner had ever said she was not free to go, she replied that Petitioner had never said that and she agreed that "at any time, all she had to do was unlock the door and just run out." *Id.* Finally, Document One refers to Nicole's trial testimony, during which she "agreed with the defense counsel that she was not kept against her will. *Id.* at 10.

Nicole's trial testimony is by definition not "new" evidence—it occurred at trial and was therefore known to the jurors. *See Taylor*, 7 F.4th at 927 (defining new evidence as "evidence that was not considered by the fact-finder in the original proceedings"). Moreover, Petitioner has not provided this Court a copy of the handwritten narrative, explained when or why the handwritten narrative was created, provided a transcript of the detective's interview of Nicole, or explained when or why the detective interviewed Nicole. Without any of this information, the Court cannot determine whether the statements Petitioner attributes to Nicole in this portion of his response are reliable and, if so, what weight they might have had on a reasonable juror.[4] *See Scott*, 2023 WL 5016642 at *11. Accordingly, Petitioner has failed to present new, reliable evidence—in the form of statements from Nicole—that sufficiently demonstrates factual innocence to allow this Court to consider the merits of his defaulted claims.

Petitioner's answer to the MOSC also asserts that Kansas state courts and Petitioner's appointed counsel in his K.S.A. 60-1507 worked together to prevent Petitioner from exhausting his claims so that they could "avoid the hardships of confrontation." (Doc. 22, p. 3 (internal quotation marks and underlining omitted).) He asks this Court to support his request for a "U.S. Justice Department Investigation of the Indigent Defense Problems in the State of Kansas" and he

---

[4] The Court notes, however, that Nicole testified at trial that she did not immediately try to get away from Petitioner during the incident because her prior experience with Petitioner was that if she did what he said, he would stop being violent. *See Donaldson* I, 2014 WL 4080074 at *10. Petitioner does not explain how additional testimony from Nicole that Petitioner did not directly tell her she was not free to go would affect a reasonable juror. It does not appear from the information now before this Court that the State's theory of prosecution involved Petitioner unequivocally telling Nicole that she was not free to go.

12

asserts that "faulty counsel assessment" has caused this case to be subject to dismissal, reminding the Court that he has a constitutional right to effective assistance of counsel. *Id.* at 3-4. Many of these statements appear to be quoted from Petitioner's second K.S.A. 60-1507 motion. *See id.* at 15-16. To the extent that they can be liberally construed to address the exhaustion issues now before this Court, they do not alter the Court's analysis as set forth above.[5]

## Conclusion

In summary, even in light of Petitioner's response to the MOSC, which the Court has liberally construed, the Court remains convinced that each of the four grounds for relief asserted in the operative second amended petition are either procedurally defaulted or barred by the doctrine of anticipatory procedural default. Petitioner has not shown cause and prejudice to justify this Court considering the merits of his claims, nor has he demonstrated that a fundamental miscarriage of justice will occur if the Court does not consider the merits of the defaulted claims. Thus, Rule 4 requires the Court to dismiss this matter because "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *See* 28 U.S.C.A. foll. § 2254. Because the Court cannot consider the merits of Petitioner's asserted grounds for habeas relief, it cannot grant him habeas relief.

## Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability [(COA)] when it enters a final order adverse to the applicant."

---

[5] Petitioner also argues in his response that his § 2254 petition was timely filed and that he is entitled to equitable tolling of the federal habeas statute of limitations. (*See* Doc. 22, p. 5-6.) These arguments are misplaced, as the issue of timeliness is not before the Court. Similarly, Petitioner's statements regarding the general duty of a prison warden to allow inmates access to legal materials so that they may file pleadings appear irrelevant. *See id.* at 6. Petitioner has been granted the opportunity to make any arguments he wishes with respect to exhaustion, procedural default, and the exceptions to the general rule that federal district courts do not consider unexhausted habeas grounds on their merits, which is the issue now before this Court.

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485. The Court concludes that its procedural rulings in this matter are not subject to debate among jurists of reason. Therefore, the Court declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that this matter is dismissed with prejudice because all of the grounds for relief asserted in the operative pleading are either procedurally defaulted or barred by the doctrine of anticipatory procedural default. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED:   This 12th day of June, 2025, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge
